## FINK *v.* UNITED STATES.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 120. Argued April 28, 1898. — Decided May 23, 1898.

Muriate of cocaine is properly dutiable under paragraph 74 of the tariff act of October 1, 1890, and not under paragraph 76 of that act.

THE case is stated in the opinion.

*Mr. Albert Comstock* for appellants.

*Mr. Assistant Attorney General Hoyt* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

This record presents for consideration certain questions of law certified to this court by the Court of Appeals for the Second Circuit. The certificate and questions therein stated are as follows:

"A judgment or decree of the Circuit Court of the United States for the Southern District of New York having been made and entered February 4, 1895, by which it was ordered, adjudged and decreed that there was no error in certain proceedings herein before the board of United States general appraisers, and that their decisions herein be, and the same are hereby, in all things affirmed, and an appeal having been taken from said judgment or decree to this court by the above-named appellants, and the cause having come on for

hearing and argument in this court, certain questions of law arose concerning which this court desires the instruction of the Supreme Court of the United States for its proper decision. The facts out of which such questions arose are as follows:

"The firm of Lehn & Fink imported into the port of New York, on April 6, 1894, certain parcels of muriate or hydrochlorate of cocaine in crystals, on which duty was exacted at twenty-five per cent, ad valorem, under paragraph 76 of the tariff act of October 1, 1890, c. 1244, 26 Stat. 567, as a chemical salt. The importers duly and seasonably protested against such exaction, upon the ground that the merchandise was dutiable at fifty cents per pound under paragraph 74 of the same act as a medicinal preparation in the preparation of which alcohol is used. After decisions by the board of general appraisers and by the United States Circuit Court of New York the question duly came by appeal from the decision of the Circuit Court to this court.

"Paragraphs 74 and 76 of said act are as follows:

"'74. All medicinal preparations, including medicinal proprietary preparations, of which alcohol is a component part, or in the preparation of which alcohol is used, not specially provided for in this act, fifty cents per pound.'

"'76. Products or preparations known as alkalies, alkaloids, distilled oils, essential oils, expressed oils, rendered oils and all combinations of the foregoing, and all chemical compounds and salts, not specially provided for in this act, twenty-five per centum ad valorem.'

"Muriate of cocaine is an alkaloidal salt and is a chemical salt produced by combination of the alkaloid cocaine and muriatic acid. Salts are either alkaloidal or alkaline, produced by combination of either alkaloid or alkalies with acids. In its preparation alcohol is necessarily used as a solvent. Muriate of cocaine is a medicinal preparation and is known as such by the physician, the chemist, the druggist and in commerce, and was so known definitely, generally and uniformly at and prior to the enactment of the tariff law of 1890. The term 'salts' or 'chemical salts' is a generic term and includes a commercial class of articles known by chemists and by phar-

macists and druggists at the date of the passage of the tariff act as covering, among others, muriate of cocaine. The commercial meaning of the term 'medicinal preparation' is the same as its ordinary meaning, viz., a substance used solely in medicine and prepared for the use of the apothecary or physician to be administered as a remedy in disease. Muriate of cocaine is dispensed in the form in which it is imported, or more often reduced therefrom to a powder by means of a mortar and pestle, or diluted in water or admixed with inert or neutral matter.

" The number of chemical salts is excessively large. A very small proportion of this number is used in medicine or as medicinal preparations. There is no adequate testimony in regard to the relative number of imported or importable medicinal preparations in the preparation of which alcohol is used, and of imported or importable chemical salts. The testimony does not disclose which paragraph includes the greater number of articles.

" Upon the foregoing facts the questions to be certified are:

" 1. Is muriate of cocaine properly dutiable under paragraph 74 of the tariff act of October 1, 1890 ?

" 2. Is muriate of cocaine properly dutiable under paragraph 76 of the tariff act of October 1, 1890 ?

" And to that end this court hereby certifies such questions to the Supreme Court of the United States."

There can be no doubt that the article in question from some points of consideration might be classified under either of the paragraphs of the statute referred to in the certificate. Thus, within the purview of paragraph 74, it is obviously a medical preparation, in the preparation of which alcohol is used. It is also equally clear that it is likewise, chemically speaking, a salt, and hence within the reach of paragraph 76. It would then follow that if either of the paragraphs stood alone in the statute, disembarrassed of the provisions found in the other, the preparation might properly come under the head of either. Being reached, then, in some of its aspects by some of the provisions found in both paragraphs, the question is, which, if either of the two, is so dominant in its con-

trol of the article in question as to exclude the operation thereon of the other.   The rule is that this, if possible, is to be determined by ascertaining whether one of the two paragraphs is more definite in its application to the article in question than is the other.   *Isaac* v. *Jonas,* 148 U. S. 648; *Bogle* v. *Magone,* 152 U. S. 623.   Being a medicinal preparation, made as such and solely used as a medicine, the language of paragraph 74 clearly more definitely applies to it than does the generic provision " of chemical compounds and salts " found in paragraph 76.   *Magone* v. *Heller,* 150 U. S. 70; *Robertson* v. *Salomon,* 130 U. S. 412.   The fact that the certificate states that " muriate of cocaine is a medicinal preparation, and is known as such by the physician, the chemist, the druggist and in commerce, and was so known definitely, generally and uniformly at and prior to the enactment of the tariff law of 1890," becomes a factor, adding cogency to the demonstration that the article falls with more definite certainty under the classification of a medicinal preparation than it does under that of a chemical salt.   *De Jonge* v. *Magone,* 159 U. S. 562; *Berbecker* v. *Robertson,* 152 U. S. 373; *Robertson* v. *Salomon,* 130 U. S. 412.   And the force of this view is not weakened by the statement in the certificate that the term " 'salts,' or 'chemical salts' is a generic term, and includes a commercial class of articles known by chemists and by pharmacists and druggists at the date of the passage of the tariff act as covering, among others, muriate of cocaine."   In reason, the result of the certified facts is simply this, that muriate of cocaine is in its narrow aspect a medicinal preparation, in its wider a chemical salt, and hence that chemical salt is a generic term designating all articles of that character, and hence embracing muriate of cocaine as the genus, must as a matter of course contain within itself the species which are embodied in it.   In its ultimate analysis, therefore, the question asked is only this : Is the genus, chemical salt, more comprehensive than the species, muriate of cocaine?

*Thus understood, it becomes of course necessary to answer the first question in the affirmative and the second in the negative, and it is so ordered.*